IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

DAVID WASHINGTON,           )
                                       )
        Plaintiff,           )
                                       )
v.                                )     Civil Action No. 3:16CV184–HEH
                                     )
SHAUN JURGENS, *et al.*        )
                                     )
        Defendants.     )

## MEMORANDUM OPINION
### (Defendants' Motions to Dismiss)

This is essentially a civil rights action filed against thirteen officers (the "Defendant officers") of the City of Fredericksburg Police Department, along with the City of Fredericksburg (the "City") itself, following an automobile accident on May 4, 2015.[1] The Amended Complaint encompasses a broad array of constitutional claims under 42 U.S.C. § 1983, along with several related common law causes of action. The underlying incident involves Plaintiff's detention in the vicinity of the accident scene and the level of force employed by the officers to restrain him, unaware that Plaintiff had suffered a stroke while operating his vehicle.

The case is presently before the Court on the individual officers' Motions to Dismiss asserting that the Amended Complaint fails to state an actionable claim or, alternatively, that the Defendant officers are entitled to qualified immunity on the constitutional claims. Similarly, the City contends that the Amended Complaint fails to

---

[1] Three officers are identified by name and the remaining ten are simply referred to as "Doe Deputies."

plausibly support a claim of municipal liability under Section 1983 and that it is immune from liability for any viable common law claims. All parties have filed memoranda of law supporting their respective positions. This Court will dispense with oral argument because it would not aid in the decisional process at this stage.

This Court's review of a motion to dismiss filed under Federal Rule of Civil Procedure 12(b)(6) is both informed and constrained by the well-pleaded facts contained in the complaint. The task at hand is to determine the sufficiency of the complaint, "not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering a motion to dismiss, plaintiff's well-pleaded allegations are taken as true and the complaint must be viewed in the light most favorable to the plaintiff. *T.G. Slater & Son, Inc. v. Donald P. & Patricia A. Brennan LLC*, 385 F.3d 836, 841 (4th Cir. 2004). Legal conclusions, however, enjoy no such deference by the reviewing court. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive Rule 12(b)(6) scrutiny, a complaint need only contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While a complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions," or a "formulaic recitation of the elements of a cause of action." *Id.* at 555 (citations omitted).

A complaint achieves facial plausibility when the facts contained therein support a reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556; *see also Iqbal*, 556 U.S. at 678. This analysis is context-specific and requires "the

2

reviewing court to draw on its judicial experience and common sense." *Francis v.*

*Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).

With respect to Plaintiff's state law claims, this Court applies the substantive law

of the Commonwealth of Virginia while applying the procedural law of the Court of

Appeals for the Fourth Circuit in weighing the factual sufficiency of the pleadings.

Net of legal conclusions, the Amended Complaint alleges that on May 4, 2015, at

approximately 5 p.m., the Plaintiff, as a result of a stroke, lost control of his vehicle while

driving southbound on Route 1 in Fredericksburg, Virginia. (Am. Compl. ¶¶ 19–20, ECF

No. 11.) "As a result of his then existing condition . . . Plaintiff . . . [struck] another

vehicle, causing minor property damage." (*Id.* ¶ 20.) Plaintiff then "proceeded a short

distance, stopping in the left hand median of a side street off of Route 1, Cowan Blvd. at

its intersection with Powhatan Street." (*Id.* ¶ 21.)

Shortly after the accident, Officer Matt Deschenes of the City of Fredericksburg

Police Department arrived at the accident scene.  At that time, according to the Amended

Complaint, Plaintiff was seated behind the steering wheel of his stopped vehicle. (*Id.* ¶

22.) "[H]e was stationary, non-violent, unarmed and did not pose imminent danger of

death or serious bodily injury to [Officer] Deschenes or anyone else." (*Id.*)  Apparently,

shortly thereafter, Officer Crystal Hill also appeared at the accident scene.  The Amended

Complaint alleges that "[d]espite the fact that the Plaintiff was unarmed and

unresponsive, not actively resisting arrest/detention or attempting to evade arrest,

Defendant Officers Matt Deschenes and Crystal Hill . . . held Plaintiff . . . at gunpoint for

several minutes ordering him to show his hands and exit the vehicle." (*Id.* ¶ 24.)

3

According to the Amended Complaint, Plaintiff was "unable to comply with any commands given by the officers due to the fact that he suffered a stroke, leaving him unable to move the left side of his body, or effectively speak or otherwise communicate." (*Id.* ¶ 25.)[2]

Several minutes after Officers Deschenes and Hill encountered Plaintiff, Officer Shaun Jurgens arrived at the scene and immediately drew his Taser. (*Id.* ¶ 26.) Plaintiff is described in the Amended Complaint as being "compliant with all directives" during this time and "trying to engage appropriate assistance from the officer by continually holding his right hand in the air and exhibiting obvious signs of medical distress." (*Id.*) Officer Jurgens then approached Plaintiff's vehicle and "discharged his Taser through the open driver's side window striking Plaintiff . . . in his face" without any verbal warnings. (*Id.* ¶ 27.) When struck with the Taser, Plaintiff "was not behaving erratically, did not have a weapon, brandish anything that looked like a weapon, and gave the Defendants no cause to believe that Plaintiff was a potentially dangerous individual." (*Id.*)

Immediately thereafter, "Officer Matt Deschenes holstered his firearm and opened the driver's side door of [Plaintiff]'s vehicle, further confirming that there were no

---

[2] In the Amended Complaint, Plaintiff alleges that one or more "Doe Deputies 1–10" dispatched Officers Matt Deschense, Crystal Hill, and Shaun Jurgens to the scene. Doe Deputies 1–10 are not identified in the Amended Complaint nor is there any indication they were present at the scene or aware of the events in the Amended Complaint as they unfolded. To the extent that a "Doe Deputy's" potential liability turns on the actions of an identified defendant, any ruling pertaining to the individual defendant will necessarily subsume the issue of the Doe Deputy's liability for such action. Where a Doe Deputy's alleged liability is independent of any named defendant, unless the factual basis for the claim in clearly deficient, an analysis of the sufficiency of the complaint as to that individual will be deferred until discovery is completed. This will enable the Doe Deputy, if identified, to respond. *See Schiff v. Kennedy*, 691 F.2d 196, 198 (4th Cir. 1982).

weapons present in the vehicle." (*Id.* ¶ 28.) Officer Jurgens "then discharged a canister

of pepper spray at point blank range" in Plaintiff's face. (*Id.*) Officer Jurgens next drew

his firearm and directed Plaintiff to get out of the vehicle or risk being shot. (*Id.* ¶ 29.)

When Plaintiff was unable to respond, Officer Deschenes forcibly removed Plaintiff from

his vehicle by his left arm. (*Id.* ¶ 30.) This caused Plaintiff to fall out of his vehicle onto

the roadway as he continued to shake his right hand above his head "exhibiting obvious

distress." (*Id.*) Officer Jurgens then placed handcuffs on Plaintiff, "while he placed his

knee on Plaintiff's back." (*Id.*)

   Shortly thereafter, when the Defendant officers attempted to secure Plaintiff's

vehicle by removing the key from the ignition, it began to roll backwards while Plaintiff

was "lying immobile, handcuffed in the roadway. The vehicle's tire struck Plaintiff's

foot and ankle causing further injury, pain, and suffering." (*Id.* ¶ 32.) In the interim,

Plaintiff "sat propped in the roadway, while being supported by Defendant Deschenes, as

he could not sit up under his own power due to being handcuffed and suffering from a

stroke." (*Id.* ¶ 34.) Plaintiff "required medical attention to remove a Taser electrode

from his face, and to neutralize the pepper spray that covered his head, torso, and

clothing." (*Id.* ¶ 40.) According to the Amended Complaint, this delayed treatment of

his underlying condition. (*Id.*) The delay in receiving medical care caused Plaintiff to

undergo "extreme physical and emotional pain and suffering." (*Id.* ¶ 41.) Due to the

events attending his arrest, Plaintiff has sustained "substantial and permanent loss of use

to the left side of his body, and his ability to speak is substantially impaired." (*Id.* ¶ 42.)

To broaden the sweep of the Amended Complaint, Plaintiff names ten "Doe Deputies" as Defendants. This group of unidentified Defendants is described in the Amended Complaint as police officers with the City of Fredericksburg Police Department acting under color of law within the course and scope of their duties as police officers at the time of the incident giving rise to the lawsuit. Although conspicuously absent from the Amended Complaint is any description of their involvement in the investigation of Plaintiff's accident on May 4, 2015, his subsequent arrest, or medical treatment, they are characterized in the Amended Complaint as police officers (Deputies 1–5), supervisory officers (Deputies 6–8), and managerial, supervisorial, and policymaking employees of the City of Fredericksburg Police Department (Deputies 9–10).

The only explanation in the Amended Complaint of the involvement of Doe Deputies 1–10 is Plaintiff's belief that they were involved in dispatching the various officers to the accident scene, assumed responsibility for failure to provide Plaintiff with immediate medical care, and played an integral role in the adoption of unconstitutional policies and substandard training. Plaintiff indicates that he will further identify and describe the actions of Doe Deputies 1–10 as the record evolves.

The centerpiece of Plaintiff's ten count Amended Complaint is Title 42 U.S.C. § 1983. This statute provides a mechanism for seeking redress for an alleged deprivation of a litigant's federal constitutional and federal statutory rights by persons acting under color of state law. Seven of the ten counts are anchored to Section 1983 claims. Count I alleges that Defendants Jurgens, Deschenes, Hill, and Doe Deputies 1–10, removed him

from his vehicle, placed him in handcuffs, and detained him at gunpoint without reasonable suspicion that he presented imminent danger, in violation of the Fourth Amendment. In Count II, Plaintiff maintains that Defendants Jurgens, Deschenes, and Hill employed excessive and unjustified force in detaining him, including the deployment of a Taser and pepper spray. Count III asserts that Defendants Jurgens, Deschenes, Hill, and Doe Deputies 1–10 failed to provide Plaintiff with timely medical treatment, in violation of the Fourth Amendment. Plaintiff contends in Count IV that Defendants Jurgens, Deschenes, Hill, and Doe Deputies 1–10 engaged in conscious-shocking conduct which deprived Plaintiff of his substantive due process rights. In Count V, Plaintiff maintains that the City ratified and approved the actions of the Defendant officers, in violation of Section 1983. Count VI charges the City with failing to adequately train the Defendant officers "to handle the usual and recurring situations with which they must regularly and routinely deal with including medical emergencies and officer's use of force during an arrest" in violation of Section 1983. (*Id.* ¶ 74.) Count VII accuses the City of expressly adopting unconstitutional policies, practices, and customs, and failing to take appropriate disciplinary action against the officers involved in Plaintiff's arrest.

The final three counts in the Amended Complaint allege statutory and common law claims against all named Defendants. These include false imprisonment, assault and battery, and negligence. Plaintiff seeks both compensatory and punitive damages.

Plaintiff divides his Section 1983 claims into four freestanding counts—detention, excessive force, medical care, and substantive due process. This Court can dispense

quickly with the denial of medical care and substantive due process claims pled in Counts III and IV.

With respect to the denial of medical care claim, assuming that the quantum of deprivation is sufficient to demonstrate constitutional harm, as opposed to mere negligence, Count III appears to be inartfully pled. *See Bruederle v. Louisville Metro. Gov't*, 687 F.3d 771, 778 (6th Cir. 2012). The United States Supreme Court has consistently counseled that claims brought by pretrial detainees for denial of medical care are governed by the Due Process Clause of the Fourteenth Amendment. *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983); *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979); *see also Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988). Integral to Count I is Plaintiff's contention that he was unlawfully detained by the Defendant officers, resulting in denial of medical care. (Am. Compl. ¶¶ 45, 54–55.) Defendants' Motions to Dismiss Count III will be granted with leave to amend if Plaintiff be so advised.[3]

Count IV, alleging a violation of substantive due process, also rests on infirm precedential terrain. Historically, the protections afforded by the substantive component of the Due Process Clause have been limited. *Albright v. Oliver*, 510 U.S. 266, 272 (1994). As Chief Justice Rehnquist, writing for the Court in *Albright*, noted:

> As a general matter, the Court has always been reluctant to expand the concept of substantive due process because the guideposts for responsible decisionmaking in this uncharted area are scarce and open-ended. The protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity.

---

[3] The dismissal of Count III in no way precludes Plaintiff from claiming damages for deprivation of medical care as a result of the excessive force alleged in Count II.

*Id.* at 271–72 (internal quotation marks and citations omitted).  The Chief Justice further

pointed out that "[w]here a particular Amendment provides an explicit textual source of

constitutional protection against a particular sort of government behavior, that

Amendment, not the more generalized notion of substantive due process, must be the

guide for analyzing these claims." *Id.* at 273 (internal quotation marks omitted) (quoting

*Graham v. Connor*, 490 U.S. 386, 395 (1989)).  Claims involving seizure, detention,

excessive force, and appropriate resulting medical care are clearly covered by other

enumerated amendments.  *See City of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998).

The Court in *City of Sacramento* explained the application of the concept of substantive

due process in seizure cases at a high level of abstraction and left the door ajar only in

cases when the claim at issue is not covered by the Fourth Amendment.  *Id.*  This is not

such a case.  The relief sought by Plaintiff in Count IV is amply covered by Counts I and

II of his Amended Complaint.  Count IV will therefore be dismissed.

      Turning next to Counts I and II, alleging constitutionally offensive detention and

excessive force, respectively, the text of the Amended Complaint presents a somewhat

confluent blend of claims.  The language mixes allegations of unlawful detention with the

unwarranted use of the Taser and pepper spray.  To enable Rule 12(b)(6) analysis, this

Court will rely on the title of each claim as demarking its intended nature.  In other

words, Count I will be deemed to pertain to the physical detention of Plaintiff, and Count II, the level of force employed in effecting Plaintiff's detention.[4]

Defendants challenge the sufficiency of Count I on two fronts. First, based upon the information known to the Defendant officers at the time, they maintain that there was probable cause to at least detain Plaintiff for hit-and-run. Alternatively, they contend that all of the responding officers are entitled to qualified immunity, again, based on their perception of Plaintiff and the physical evidence at the scene. These arguments have derivative application to the Doe Deputy Defendants.

Based on the allegations contained in the Amended Complaint, the issue of whether the responding officers had probable cause to arrest the Plaintiff admittedly may lend itself to spirited debate. However, a careful review of the Amended Complaint certainly yields sufficient articulable suspicion to warrant the Plaintiff's detention pending further inquiry. According to the Amended Complaint, Plaintiff "lost control of his vehicle, causing it to strike another vehicle, causing minor property damage." (Am. Compl. ¶ 20.) "After the accident, the Plaintiff proceeded a short distance, stopping in the left hand median of a side street off of Route 1, Cowan Blvd. at its intersection with Powhatan Street." (*Id.* ¶ 21.) Distilled to its essence, Plaintiff was involved in an automobile accident and arguably failed to stop at the *immediate* scene. *See* Va. Code § 46.2-894 (requiring driver of any vehicle involved in accident in which attended property is damaged to immediately stop as close to scene of accident as possible without

---

[4] Although Plaintiff employs the term "arrest" throughout the Amended Complaint, he concedes that he was not taken into custody, arrested, or charged with a crime as a result of the incident. (Pl.'s Mem. Opp'n Mot. Dismiss 12 n.13, ECF No. 19.)

obstructing traffic). The Defendant officers certainly had reasonable suspicion to believe that a traffic violation had occurred, justifying detention and questioning of the operator of the offending vehicle. *See United States v. Digiovanni*, 650 F.3d 498, 506 (4th Cir. 2011) (citing *Whren v. United States*, 517 U.S. 806, 809–10 (1996)). This Court, however, need not reach the question of whether there was sufficient probable cause or articulable suspicion to extend the initial detention of the Plaintiff.

Although the Supreme Court in *Saucier v. Katz*, 533 U.S. 194, 201 (2001), mandated a two-facet inquiry for resolving government officials' qualified immunity claims, this regimented approach was abolished in *Pearson v. Callahan*, 555 U.S. 223, 242 (2009). District courts may now address the two determinative questions: (1) whether the plaintiff has established a violation of a constitutional right, and (2) whether that right was "clearly established" at the time of the alleged violation, in the "order . . . that will best facilitate the fair and efficient disposition of each case." *Id.* In *Butz v. Economou*, the Supreme Court cautioned trial courts that qualified immunity covers "mere mistakes in judgment, whether the mistake is one of fact or one of law." 438 U.S. 478, 507 (1978); *see also Pearson*, 555 U.S. at 231. The law does not require scientific precision.

Qualified immunity operates to protect law enforcement and other government officials from civil damages liability for alleged constitutional violations stemming from their discretionary functions. *Anderson v. Creighton*, 483 U.S. 635, 638–39 (1987). The protection extends to "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "Indeed, as we have emphasized

repeatedly, '[o]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.'" *Raub v. Campbell*, 785 F.3d 876, 881 (4th Cir. 2015) (alteration in original) (quoting *S.P. v. City of Takoma Park, Md.*, 134 F.3d 260, 266 (4th Cir. 1998)).

Equally important in a qualified immunity analysis is that it does not turn on a retrospective comparison of a defendant officer's actions with a theoretical textbook investigation. *See Abney v. Coe*, 493 F.3d 412, 419 (4th Cir. 2007). As Chief Judge Traxler commented in *Doe v. Broderick*:

> Qualified immunity thus provides a "safe-harbor" from tort damages for police officers performing *objectively reasonable* actions in furtherance of their duties. This 'safe-harbor' ensures that officers will not be liable for "bad guesses in gray areas" but only for "transgressing bright lines." Of course, officers are not afforded protection when they are "plainly incompetent or . . . knowingly violate the law." But, in gray areas, where the law is unsettled or murky, qualified immunity affords protection to an officer who takes an action that is not clearly forbidden – even if the action is later deemed wrongful. Simply put, qualified immunity exists to protect those officers who reasonably believe that their actions do not violate federal law.

225 F.3d 440, 453 (4th Cir. 2000) (alteration in original) (citations omitted).

Thus, the "dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful *in the situation he confronted.*" *Saucier*, 533 U.S. at 202 (emphasis added). "In other words, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Carroll v. Carman*, 135 S. Ct. 348, 350 (2014) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

The immediate analysis with respect to Count I is cabined and focuses solely on the detention of Plaintiff for his apparent involvement in a hit-and-run accident. There is no indication from the face of the Complaint that a reasonably trained police officer, unskilled in the science of medicine, could have immediately concluded that Plaintiff's medical condition was the apparent cause of the accident. Any suggestion to the contrary in the Complaint is a mere conclusion as it cites no symptoms obvious to a lay person. The Defendant officers are therefore entitled to qualified immunity on Count I. The level of force employed by the investigating officers is a different issue.

At this stage, the Court's plausibility assessment of Count II is constrained to the well-pleaded facts in the Amended Complaint. The Amended Complaint portrays Plaintiff as a physically-incapacitated motorist involved in what could be technically considered a hit-and-run accident, albeit with minor property damage. It further depicts Plaintiff as demonstrative, but not resistant to police commands. Notwithstanding, it alleges that following the accident and without provocation, the named Defendant officers, individually and in concert, tased and pepper sprayed Plaintiff. Furthermore, after forcibly removing him from his vehicle, he was handcuffed and injured by his rolling vehicle.

A claim of "excessive force in the course of making [a] . . . 'seizure' of [the] person . . . [is] properly analyzed under the Fourth Amendment's 'objective reasonableness' standard." *Scott v. Harris*, 550 U.S. 372, 381 (2007) (alterations in original) (quoting *Graham*, 490 U.S. at 388). "In determining whether force was excessive, a court must weigh 'the nature and quality of the intrusion on the individual's

13

Fourth Amendment interests against the countervailing governmental interests at stake.'"

*Waterman v. Batton*, 393 F.3d 471, 476 (4th Cir. 2005) (citing *Graham*, 490 U.S. at 396).

The Amended Complaint reveals a hit-and-run accident with minor damage.[5] It is

devoid of any indication of prolonged reckless flight or active physical resistance. *See*

*Estate of Armstrong v. Village of Pinehurst*, 810 F.3d 892, 899 (4th Cir. 2016). Of

course, at this stage, the Court has not heard the Defendant officers' side of the story.

Based on the present record, and viewing the evidence in the light most favorable

to Plaintiff, he has clearly pled an actionable Section 1983 excessive force claim. A more

informed analysis of the Defendant officers' entitlement to qualified immunity must

await development of a more fulsome record. The Defendants' Motions to Dismiss

Count II will be denied as to all named Defendant officers and any "Doe Deputy" present

at the accident scene. The Motions, however, will be granted as to any "Doe Deputy" not

present at the scene. This Court can neither impute knowledge nor liability to a "Doe

Deputy" simply because they are an officer's assigned supervisor or dispatching the

officers to the scene. *See Wilkins v. Montgomery*, 751 F.3d 214, 226–27 (4th Cir. 2014)

(citing *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)).

In Counts V through VII, Plaintiff alleges that the City has also incurred liability

as a result of its failure to adequately train its officers and its adoption of unconstitutional

policies and practices. In *Monell v. Department of Social Services*, 436 U.S. 658 (1978),

the Supreme Court held that a municipality may be subject to liability under Section 1983

---

[5] If the resulting damage was less than $1,000.00, the traffic offense would be a Class I
misdemeanor. Va. Code § 46.2-894.

when the violation of a plaintiff's federally-protected rights can be attributed to the

enforcement of a municipal policy, practice, or decision of a final municipal policymaker.

"[I]t is when execution of a government's policy or custom, whether made by its

lawmakers or by those whose edicts or acts may fairly be said to represent official policy,

inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at

694. A municipality may be held liable under Section 1983 only when there is proof of a

direct causal link between a policy or custom and the alleged constitutional deprivation.

*City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

While the theories of municipal liability pled under Counts VI and VII, failure to

train and unconstitutional custom or policy, respectively, are commonly recognized areas

of potential liability, Count V, alleging ratification, falls outside the jurisprudential

mainstream. In Count V, Plaintiff alleges, upon information and belief, that the final

policymaker knew of, and specifically approved of or will specifically approve of, the

acts of these Defendants. (Am. Compl. ¶ 67.) Plaintiff amplifies this claim in his

Memorandum in Opposition to Defendants' Motion to Dismiss by suggesting that the

City Attorney's defense of its officers in this suit constitutes ratification of their actions

and confirms that such actions constitute City policy. (Pl.'s Mem. Opp'n Mot. Dismiss

24, ECF No. 20.) Plaintiff offers no authority to support this novel theory of liability, and

this Court declines to adopt it. Supportive comments by public officials may be probative

of the City's custom or policy, but the City's decision to legally defend the actions of its

employees is not an independent basis of municipal liability.

Furthermore, public or legal defense of an officer's actions by a policymaker, after the fact, is insufficient standing alone to support an independent cause of action. To support an actionable Section 1983 claim, a policymaker's decision must be causally connected to the alleged violation of a plaintiff's federally-protected right. *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 400 (1997). Therefore, Count V will be dismissed.

While Count VI, alleging failure to train, is scant on facts, it is sufficient to survive Rule 12(b)(6) review. It specifically alleges that the City failed to adequately train its officers "to handle the usual and recurring situations with which they must regularly and routinely deal with including medical emergencies and officer's use of force during an arrest." (Am. Compl. ¶ 74.) It also recites that the City "was deliberately indifferent to the obvious consequences of its failure to train its officers adequately." (*Id.* ¶ 75.) Coupled with the description of the events occurring at the accident scene, the skeletal allegations in Count VI are sufficient to raise a right to relief above the speculative level. The Defendants' Motions to Dismiss Count VI will be denied at this stage.

In Count VII, alleging unconstitutional custom or policy, Plaintiff delineates a number of allegedly unconstitutional customs, practices, and policies. These include employing and retaining officers with dangerous propensities for abuse of authority and use of excessive force; inadequately supervising, training, and disciplining such officers; maintaining grossly inadequate procedures for reporting, investigating, and reviewing allegations of misconduct; failing to adequately discipline officers for proven misconduct; announcing that unjustified shootings, use of Taser, and pepper spray are within the policy of the City of Fredericksburg Police Department; and encouraging or facilitating a

16

code of silence among law enforcement officers. (*Id.* ¶ 85.) Plaintiff also alleges that the City maintains a policy of "indifference towards soaring numbers of police incidents involving the use of excessive force, including, but not limited to, those incidents involving the use of guns, Tasers, and pepper spray." (*Id.*)

Viewed in the light most favorable to Plaintiff, the allegations supporting Count VII are more than sufficient to plead a plausible Section 1983 claim based on municipal custom and policy. As the Supreme Court clarified in *Twombly*, a complaint need not assert detailed factual allegations, but such allegations must be enough to raise a right to relief above the speculative level to one that is plausible on its face, rather than merely conceivable. 550 U.S. at 570.[6] The Defendants' Motions to Dismiss Count VII will therefore be denied.[7]

The final three counts allege common law torts governed by Virginia law. Although Counts IX and X, which allege assault and battery, and negligence, respectively, encompass all Defendants, Plaintiff concedes in his Memorandum in Opposition that the City is immune from liability for intentional torts committed by employees during the performance of governmental functions. *See Niese v. City of*

---

[6] Justice Souter, writing for the majority in *Twombly*, reminded trial courts reviewing Rule 12(b)(6) motions that the plausibility standard "does not impose a probability requirement at the pleading stage." 550 U.S. at 556. He added that a well-pleaded complaint may proceed even if recovery is unlikely. *Id.*

[7] In Section VI of his Opposition, Plaintiff conceded that, as argued in the City's brief, sovereign immunity bars recovery on "Counts VII, IX, and X." (Pl.'s Opp'n 24.) The Court construed the inclusion of Count VII as a typographical error given that the immediately preceding section of Plaintiff's Opposition strenuously argues that he has stated a claim for unconstitutional policy or custom. Further, the City's sovereign immunity argument pertained to Counts VIII, IX, and X of the Amended Complaint, and the City did not mention Count VII in that section. (Defs.' Mem. 24–25.)

*Alexandria*, 264 Va. 230, 239 (2002).  Accordingly, Counts IX and X will be dismissed as to the City.

Count VIII seeks damages against the named Defendant officers and all ten unknown Doe Deputies for false imprisonment.  Succinctly stated, "[f]alse imprisonment is the restraint of one's liberty without any sufficient legal excuse." *Lewis v. Kei*, 281 Va. 715, 724 (2011).  Plaintiff acknowledges in his opposition that he was detained but never formally arrested.  As discussed in more detail *infra*, the responding officers had ample legal justification to detain the Plaintiff pending investigation of his involvement in what appeared to be a hit-and-run accident.  *See* Va. Code § 46.2-894.  In fact, Virginia law requires a motorist involved in *any* automobile accident to remain at the scene until all pertinent information is gathered.  *See Clark v. Galdamez*, 2016 WL 3223477, at *3 (Va. June 9, 2016); *Smith v. Commonwealth*, 66 Va. App. 382, 388–91 (2016).  Therefore, the initial investigative detention of Plaintiff at the accident scene was permissible under Virginia law.  Count VIII will therefore be dismissed as to all Defendants.

Count IX alleges that all named Defendant officers, along with the Doe Deputies,

> acting within the course and scope of their employment, intentionally shot Plaintiff David Washington with a Taser, utilized pepper spray in his face at point blank range, and used unreasonable and excessive force against him. They further threatened him with imminent bodily harm and the use of deadly force without provocation or legal justification. They further failed to deescalate the encounter or failed to intervene on Mr. Washington's behalf.

(Am. Compl. ¶ 101.)

As the Supreme Court of Virginia restated in *Koffman v. Garnett*, assault and battery are two independent torts:

> The tort of assault consists of an act intended to cause either harmful or
> offensive contact with another person or apprehension of such contact,
> and that creates in that other person's mind a reasonable apprehension
> of an imminent battery. The tort of battery is an unwanted touching
> which is neither consented to, excused, nor justified. Although these
> two torts "go together like ham and eggs," the difference between them
> is "that between physical contact and the mere apprehension of it."

265 Va. 12, 16 (2003) (citations omitted); *see also McLenagan v. Karnes*, 27 F.3d 1002,

1009 (4th Cir. 1994).

In *Jones v. Commonwealth*, the Supreme Court of Virginia provided further

explanation of the common law tort of battery: "Battery is the actual infliction of

corporal hurt on another (e.g., the least touching of another's person), willfully or in

anger, whether by the party's own hand, or by some means set in motion by him." 184

Va. 679, 682 (1946) (emphasis removed). To support an actionable claim of battery

under Virginia law, there must be some form of physical contact by the assailant. *Id.; see*

*also Hardy v. Commonwealth*, 58 Va. 592, 601 (1867).

Reviewing the factual allegations in the Amended Complaint under that analytical

framework, Plaintiff appears to present plausible claims against Officers Jurgens, Hill,

and Deschenes. It alleges that Officer Jurgens discharged his Taser through the open

driver's side window, striking Plaintiff in the face. Thereafter, Officer Jurgens

discharged a canister of pepper spray at point blank range in Plaintiff's face. Both

Officers Jurgens and Hill brandished their firearms. Officer Jurgens threatened to shoot

Plaintiff if he did not exit his vehicle. With respect to Officer Deschenes, the Amended

Complaint alleges that he forcibly pulled Plaintiff from his vehicle without legal

justification. At this stage, the Court must view the well-pleaded allegations from a one

19

dimensional perspective—in the light most favorable to the Plaintiff. *T.G. Slater & Son*, 385 F.3d at 841.

While Count IX states a plausible claim to relief as to Officers Jurgens, Hill, and Deschenes, it is devoid of any information from which a reasonable inference could be drawn that Doe Deputies 1–10 were present at the scene of Plaintiff's detention or in any way contributed to the events which allegedly caused his injuries. Therefore, Count IX will be dismissed as to Doe Deputies 1–10.

Plaintiff's last claim is an omnibus allegation of common law negligence encompassing the entire panoply of purported actions and inactions of the Defendants contributing to his injuries. Count X casts a wide net spanning negligent use of deadly force, arrest tactics, training and handling of evidence, to negligent medical care, communication and supervision. Based on the factual context of the Amended Complaint, and the breadth of Count X, the Court concludes that with the benefit of required reasonable inferences, Plaintiff has at least in part crafted a plausible claim. The task of parsing and factually evaluating each subpart of Count X requires a more fully developed record. At this point, however, it survives initial Rule 12(b)(6) review.

As a collateral challenge to Count X, Defendants seeks to invoke sovereign immunity. An enduring principle of Virginia law is the entitlement of public employees to sovereign immunity when engaged in activities involving the exercise of judgment and discretion. *See Messina v. Burden*, 228 Va. 301, 313 (1984). However, as the Supreme Court of Virginia pointed out in *James v. Jane*, "A state employee who acts wantonly, or in a culpable or grossly negligent manner, is not protected." 221 Va. 43, 53 (1980).

Count X, read in context of the overall Amended Complaint, pleads claims which, if proven, could rise to the level of gross negligence. Therefore, the Court will reserve judgment on the application of sovereign immunity until the record is more fully developed.

Finally, the Defendants urge the Court to preclude punitive damages on both factual and legal grounds. As frequently emphasized, the scope of this Court's factual review at this juncture is confined to the well-pleaded facts in the Amended Complaint. The touchstone for punitive damages liability in Section 1983 cases is whether the named Defendant officers acted with malice or in callous disregard of Plaintiff's federally-protected rights. *See Smith v. Wade*, 461 U.S. 30, 51–52 (1983); *Robles v. Prince George's Cnty.*, 302 F.3d 262, 273 (4th Cir. 2002). From the narrow permissible perspective of the Amended Complaint, the allegations of excessive force in Count II, which are assimilated into Counts IX and X, if proven, would be sufficient to allow the trier of fact to consider punitive damages. The same reasoning applies to the state common law claims. *See Wallen v. Allen*, 231 Va. 289, 297 (1986). To warrant punitive damages under Virginia law, the behavior must be willful and wanton. *See Green v. Ingram*, 269 Va. 281, 291–92 (2005).

On the other hand, federal law bars the recovery of punitive damages from municipalities in Section 1983 cases, precluding such damages on Counts VI and VII. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 267 (1981).

Based on the foregoing analysis, the Defendants' Motions to Dismiss the Amended Complaint are granted in part and denied in part.  An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
United States District Judge

Dated: July 1, 2016
Richmond, VA